## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **MOHAMMED SHAHID, D.P.M.** | : | |
| **6009 Creekside Way** | | |
| **Fairfield Township, Ohio 45011** | : | **CASE NO.:** |
| **Plaintiff,** | : | |
| vs. | : | |
| **CHARLES GREG COBB** | : | |
| **625 Eden Park Drive** | | |
| **Cincinnati, Ohio 45222,** | : | |
| | | **Judge:** |
| and | : | |
| **RODNEY ROOF, D.P.M.** | : | |
| **379 Dixmyth Avenue** | | |
| **Cincinnati, Ohio 45222,** | : | |
| and | : | |
| **TRIHEALTH G, LLC** | : | **JURY DEMAND ENDORSED** |
| **625 Eden Park Drive** | | **HEREON** |
| **Cincinnati, Ohio 45222,** | : | |
| **Defendants.** | : | |

### CIVIL RIGHTS COMPLAINT FOR UNLAWFUL DISCRIMINATION AND RETALIATION, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF, AND BREACH OF CONTRACT

Now comes the Plaintiff, Mohammed Shahid, D.P.M, and for his civil rights complaint for race and religious discrimination against the Defendants, Charles Cobb, Rodney Roof, D.P.M., and TriHealth G, LLC ("TriHealth," or the "Practice"), sets forth the following averments and allegations, to wit:

**PARTIES, JURISDICTION, AND VENUE**

1. Dr. Shahid is a United States citizen, a resident of Butler County, Ohio, and a Podiatrist licensed to practice medicine in Ohio. Dr. Shahid maintains a surgical practice focusing on orthopedic foot and ankle reconstruction and repair, in addition to treating a general podiatric patient population emphasizing preventive medicine and the treatment of chronic conditions.

2. Defendant Charles Cobb is TriHealth's Senior Director of Clinical Services (the "Senior Director"). Mr. Cobb exercised managerial and supervisory responsibilities over clinical practice areas and employees, including podiatry and Dr Shahid.

3. Defendant Rodney Roof, D.P.M., is a podiatrist and TriHealth's Director of Podiatry and Associate Director (the "Associate Director" and "DoP"). Dr. Roof managed and supervised TriHealth's podiatry department and was Dr. Shahid's immediate supervisor.

4. Jurisdiction of this Court is predicated on 42 U.S.C. § 1981, 42 U.S.C. § 1988, and 42 U.S.C. §2000e *et seq.* providing for subject matter jurisdiction and over state law claims under the doctrine of supplemental jurisdiction. Venue is proper under 28 U.S.C. § 1391.

**BASIS OF DISPUTE**

8. Dr. Shahid started practicing podiatry at TriHealth in September 2015. As a condition of employment, he signed a certain Professional Employment Agreement with TriHealth, copy attached at Exhibit A (the "PEA"). The PEA required Dr. Shahid to perform services in compliance with the *Ethical and Religious Directives for Catholic Health Care Services*, Fifth Edition, and all TriHealth policies and procedures, rules, regulations, and protocols contained in TriHealth's Physician Employment Policies and Procedures Manual (the "EPPM"). Despite the PEA requiring Dr. Shahid to comply with the EPPM, even though the EPPM expressly states that it is not a

contract, TriHealth reserved the right to "interpret" and change EPPM policies at will, including compensation policies, without notice, and without Dr. Shahid's consent.

9. Under the EPPM and the PEA, Dr. Shahid's employment was also purportedly governed by the policies of the TriHealth Physician Enterprise Corp. (the "TPEC"), the TPEC Physicians Compliance Manual (the "Compliance Manual") policies, the TriHealth Code of Ethical Business and Professional Behavior (the "TCEBPB"), and the Corporate Compliance Program (the "CCP"). Copies of the EPPM, TPEC policies, the Compliance Manual, the TCEBPB, and the CCP are not provided as exhibits, as these documents are not contracts.

10. The PEA (which is a contract) required TriHealth to supply Dr. Shahid with instruments, medical supplies, and support staff necessary for the effective and efficient performance of his responsibilities. The PEA also required TriHealth to ensure that Dr. Shahid received all training needed to chart his services in compliance with TriHealth's policies and specifications, training, and instructions. Under the PEA, Dr. Shahid could terminate the PEA for cause upon thirty days written notice of TriHealth's failure to meet these commitments and to cure the breach.

11. When Dr. Shahid started working at TriHealth, he was the only Muslim of Pakistani national origin and Punjabi ethnicity working in the Podiatry Department. As Dr. Shahid continued his practice at TriHealth, he was chronically understaffed and noticed that TriHealth assigned proportionately more support staff to other physicians and the other podiatrists in the Department. Dr. Shahid would frequently run low on medical supplies when the other podiatrists seemed to have all the medical supplies they needed. Dr. Shahid complained to TriHealth management and administrative staff about the situation, but TriHealth took no corrective action.

12. Under the PEA, Dr. Shahid assigned all rights to submit charges or receive payment for his services to TriHealth. Dr. Shahid was responsible for charting and coding his services per TriHealth's specifications, training, and instructions. TriHealth was responsible for providing correct information, training, and instructions so physicians could correctly code medical services. To ensure that TriHealth's charges for medical services were properly coded, TriHealth maintained a coding department responsible for auditing physician charting for medical services before TriHealth submitted invoices for the physician's services.

13. During Dr. Shahid's employment at TriHealth, he requested assistance and training on medical services coding but received no response, inadequate training, and inaccurate information. Nonetheless, Dr. Shahid followed all TriHealth instructions, submitted all documentation, and charted all services that he performed according to TriHealth's instructions and in compliance with federal and state laws and regulations. Dr. Shahid has attended all TriHealth training and educational sessions, complied with all TriHealth coding requirements, and was repeatedly assured by TriHealth that he had correctly coded his medical services.

14. Shortly after Dr. Shahid started working at TriHealth, he accepted an attending physician appointment at Good Samaritan Hospital. In response to Dr. Shahid's inquiries, Dr. Roof (at the time a TriHealth coworker and participating in the Good Samaritan residency program) and Dr. Todd Adams, Residency Director, assured Dr. Shahid that he would be paid a stipend for performing these additional responsibilities. However, though TriHealth paid stipends to other physicians and podiatrists for performing attending responsibilities, TriHealth never paid a stipend to Dr. Shahid for his additional attending services.

4

15. After Mr. Cobb's appointment to Senior Director in 2019, the DoP position became open in July 2021, and Dr. Shahid applied for the job. However, although Dr. Shahid was better qualified than Dr. Roof, TriHealth never considered him for the position. Instead, Mr. Cobb acted as though he was insulted that Dr. Shahid had applied for the job and instructed him (confirmed by email) to withdraw his application in favor of Dr. Roof, explaining that TriHealth had already decided to appoint Dr. Roof to Associate Dir. and DoP and TriHealth posted the opening for the position was posted only to meet a TriHealth policy requirement.

16. After Mr. Cobb became TriHealth's Senior Director in 2020 and Dr. Roof was appointed to DoP in 2021, the discrimination against Dr. Shahid intensified. Except for an August 31 email that was written for Mr. Cobb by TriHealth's legal counsel, Mr. Cobb has disrespected Dr. Shahid, constantly referring to him by his first or last name and omitting his "doctor" title in their oral and written communications (including at an interview with Dr. Shahid on August 16, 2023, which Dr. Shahid recorded). In contrast, Mr. Cobb always addresses other Practice podiatrists and physicians as doctors.

17. In 2020, Dr. Roof contrived resident complaints against Dr. Shahid as a pretext to remove him from the Good Samaritan residency program, replacing him with a Caucasian Christian coworker. Dr. Roof and Mr. Cobb ignored Dr. Shahid's objections to his dismissal. Dr. Roof exercised his authority as DoP to schedule Dr. Shahid disproportionally and sometimes exclusively for practice hours or on-call duty during holidays, explaining that working on holidays was less of an imposition to him because of his religious beliefs. The staffing, instrumentation, and medical supply shortage persisted, became chronic, and sometimes was acute, requiring Dr. Shahid and his

staff to work extended hours, reschedule appointments and procedures, and scrounge for medical supplies and instruments from other podiatrists' offices.

18. Aided and abetted by TriHealth and motivated by discriminatory animosity, Mr. Cobb and Dr. Roof excluded Dr. Shahid from the decision to hire Dr. Casey Blanton, D.P.M., Caucasian Christian, and pressured him to relocate his practice from Clifton in favor of Dr. Blanton so she could use his offices. When Dr. Shahid refused to transfer his central office location, Dr. Roof substantially reduced his "surgery block time," disrespected him, undermined his authority with residents and staff, and continued to ignore his requests for adequate staffing, instrumentation, and medical supplies.

19. Dr. Shahid became board-certified in 2021 and asked TriHealth to update the status of his credentials on the Practice webpage, as was routine for all TriHealth podiatrists and physicians. Nonetheless, TriHealth never responded to Dr. Shahid's request to update his credentials and took no action to refresh the webpage or otherwise publicize his current credentials. Instead, TriHealth undermined Dr. Shahid's practice by assigning incompetent temporary staff, supporting unwarranted staff complaints against him, disrespecting him, and unjustifiably questioning his judgment and professional conduct.

20. In 2022, Dr. Shahid started receiving calls from his patients asking about a letter that they had received stating he no longer worked at TriHealth and that they would need to find a new doctor. Dr. Shahid asked the practice manager who sent the letter and why the letter was sent, and she denied any knowledge of the letter, stating that she could not find any record of the letter. As of the date of this Complaint, TriHealth has never admitted that the letter exists and has not notified Dr. Shahid of the sender's identity and why the letter was sent.

6

21. In 2022, Dr. Roof started orchestrating Incident Response Improvement System reports ("IRIS reports") to falsely accuse Dr. Shahid of improperly prescribing medication, failing to follow procedures, exercising poor judgment, and violating conduct expectations to harass him and subsequently as a pretext to support allegations of misconduct and disciplinary action. Although TriHealth claims to have investigated the false IRIS reports, Mr. Cobb produced no evidence to support the allegations. TriHealth took no disciplinary action against Dr. Shahid in response to the false IRIS reports.

22. During a meeting in June 2023, TriHealth claimed that Dr. Shahid made coding errors when charting medical services and owed the Practice $294,083.00. Dr. Shahid was confounded. This meeting was the first time TriHealth stated that he was coding incorrectly. Before the June 2023 meeting, all TriHealth's evaluations of Dr. Shahid's coding had met expectations. Dr. Shahid attended TriHealth's code training and educational opportunities and studied all TriHealth coding instructions. TriHealth repeatedly assured Dr. Shahid that his coding was correct. Nor had TriHealth ever warned, counseled, or given Dr. Shahid any guidance that his coding was incorrect or that he needed to change his coding to comply with TriHealth's policies.

23. While Dr. Shahid was considering his response to TriHealth's $294,083.00 payment demand, TriHealth placed him on a performance improvement plan (the "PIP") on August 16, 2023. In the PIP, for the first time, TriHealth accused Dr. Shahid of being "consistently 1-3 hours behind during clinic week" for the first time. TriHealth asserted that Dr. Shahid had five IRIS reports against him since 2022, that there were "several incidents over the last couple of years that have required meetings and coaching," and falsely insinuated that Dr. Shahid had acted unprofessionally and disrespectfully towards coworkers and management.

24. The PIP required Dr. Shahid to agree to and comply with TriHealth's "recoupment plan" and pay the Practice $271,036, show improvement over nonexistent performance deficiencies, always act professionally and respectfully (which he already did), and that TriHealth had "zero-tolerance to any additional IRIS report." TriHealth's coding team was to review Dr. Shahid's charting and give weekly feedback on his coding, which TriHealth was already responsible for doing per TriHealth's PEA support obligations. Under the PEA and by custom and practice, TriHealth's physicians relied on TriHealth and TriHealth's coding team to ensure medical charting complied with TriHealth coding policies. Contrary to the PEA, TriHealth failed to provide sufficient education and training for Dr. Shahid to chart medical services per TriHealth's coding policies. Dr. Shahid's failure to meet any PIP requirements would result in his termination.

25. Dr. Shahid requested that TriHealth justify the contention that he owed $271,036.00. In response, Mr. Cobb emailed Dr. Shahid on August 31, falsely asserting that federal and state law required Dr. Shahid to reimburse TriHealth for medical services that TriHealth improperly invoiced and that he breached the PEA by failing to meet this requirement. Mr. Cobb blamed Dr. Shahid for TriHealth's coding errors and falsely accused him of failing to attend educational meetings held by TriHealth for coding. Mr. Cobb then falsely asserted that federal law required Dr. Shahid to pay $271,036.00, or TriHealth's tax-exempt status would be jeopardized.

26. Dr. Shahid retained legal counsel in response to TriHealth's demands and being placed on a PIP. By letter dated September 8, 2023, Dr. Shahid refuted TriHealth's contentions that he was contractually obligated to pay TriHealth anything. He also notified TriHealth that he objected to Mr. Cobb and Dr. Roof's discrimination during his employment at TriHealth. Dr. Shahid gave TriHealth specific examples of the discriminatory treatment, including TriHealth's failure to

provide sufficient support staff, instrumentation, and medical supplies and disproportionally scheduling Dr. Shahid to work on holidays. In response, TriHealth demanded that Dr. Shahid document his allegations of discrimination even though TriHealth already had the documents that Dr. Shahid had referenced, including Mr. Cobb's emails, support staff assignments, instrument and supply allocations, and holiday schedules, which are all easily retrievable by TriHealth.

27.     In the September 8 letter, Dr. Shahid explained his objections to TriHealth's demand to pay $271,036.00. Dr. Shahid cited legal authorities refuting TriHealth's contention that the PEA contractually obligated him to comply with TriHealth's unilateral employment policies and the policies of other organizations that TriHealth was not contractually bound to follow. TriHealth has yet to produce any authority supporting TriHealth's contention that TriHealth's EPPM, the TPEC policies, the Compliance Manual, the TCEBPB, and the CCP are contractual obligations binding only against Dr. Shahid under the PEA.

28.     Receiving no indication that TriHealth would stop discriminating against him, Dr. Shahid filed a Charge of Discrimination with the Ohio Civil Rights Commission (the "OCRC"), Charge no. DAY76 (003528)11272023, requesting dual filing with the Equal Employment Opportunity Commission (the "EEOC"), Charge no.: 22A-2024-01359. Dr. Shahid has requested and awaits the OCRC and EEOC's right-to-sue letters and intends to supplement his Complaint when the right-to-sue letters are issued.

29.     Because TriHealth failed to schedule sufficient staffing and competent substitute staff, several incidents occurred where patients did not have vitals taken or recorded, injections were not administered or were placed improperly, Dr. Shahid had to delay patient procedures and surgeries, and substitute staff failed to chart patient treatment accurately. When Dr. Shahid attempted to hold

9

substitute staff accountable and complained, TriHealth accused him of acting unprofessionally, pressured him to justify his behavior, and demanded he apologize. After Dr. Shahid heard that Dr. Roof was contriving to arrange another false IRIS report, he became increasingly concerned that Mr. Cobb and Dr. Roof were fabricating additional misconduct charges against him.

30. Amid false accusations by the practice manager that Dr. Shahid had coerced a staff member to work while on bereavement leave, Dr. Shahid learned that TriHealth was fabricating yet another IRIS report in retaliation for his discrimination claims and to pressure and coerce him into signing a payment agreement. Nor had TriHealth acted to cure the lack of medical instruments and supplies or correct the staffing situation. Recognizing he was vulnerable to additional retaliation, Dr. Shahid notified TriHealth on September 29, 2023, that he was terminating the PEA for cause, explaining that TriHealth had breached PEA obligations to provide adequate medical instruments and supplies and support personnel and for unlawful discrimination.

31. At all times relevant hereto, TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, intentionally discriminated against Dr. Shahid because of his race and religion, denying him a promotion, adequate staffing, instrumentation, equipment, and supplies needed for his practice, disproportionally scheduling him to work on holidays, falsely accusing him of misconduct and other overt acts of disparate treatment. TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, unlawfully placed Dr. Shahid on a PIP and, in reprisal for his reports of discrimination, used Dr. Brian Stader, TriHealth's President, as an unwitting cat's paw to unlawfully terminate him.

32. After submitting his notice that TriHealth was in breach of the PEA and termination of the PEA, Dr. Shahid continued reporting to work to ensure a smooth patient transition. In response to his repeated inquiries to the practice manager about continued patient care, the practice manager

assured him in person and via email that his departure was routine, that TriHealth had appropriate protocols in place, had made all the necessary arrangements, and that everything had been done to ensure continued care for his patients. Nonetheless, the practice manager took no action to improve the staffing situation or provide adequate medical instrumentation and supplies, repeatedly mischaracterized his conversations with her, and removed Dr. Shahid from the on-call schedule.

33. On October 6, 2023, Dr. Shahid informed the practice manager that he was taking a personal leave of absence until TriHealth took some action towards curing the breach of the PEA or the PEA notice to cure period expired. TriHealth responded on October 16, 2023, retaliating against Dr. Shahid by terminating his employment and making false allegations of misconduct, alleging that "your personal misconduct is of such a serious nature that your continued employment will create a substantial likelihood of injury or damage to the health and safety of TriHealth patients," and further asserting that he had "failed to maintain a good reputation or character, and… failed to work harmoniously with others such that the practice is not able to operate in an orderly manner."

34. Worse yet, TriHealth falsely accused Dr. Shahid of abandoning his patients and placing them at risk despite the practice manager's assurances that TriHealth had attended to all patient needs. Though Dr. Shahid left the practice the previous week, TriHealth notified him that his employment was terminated and gave him "until the end of the day today to complete all open patient charts." TriHealth then had the affront to assure Dr. Shahid that his termination would "not adversely affect your medical staff appointment, clinical privileges, or membership status, nor does it entitle you to the hearing and appeal rights set forth in the Medical Staff Bylaws."

35. On November 15, 2023, TriHealth filed a suit against Dr. Shahid in Hamilton County Common Pleas Court, claiming unjust enrichment and breach of contract, claiming $271,036.00 in damages. TriHealth subsequently filed an Amended Complaint, asserting the same breach of contract and unjust enrichment claims, demanding $294,083.00 in damages. Under the PEA, Dr. Shahid's claims against TriHealth arising from employment are subject to arbitration. In response to Dr. Shahid's motion, the Trial Court issued an agreed entry, staying proceedings pending arbitration. Dr. Shahid has requested right-to-sue letters from the OCRC and EEOC and will supplement his Complaint and notify the Court upon receipt of the OCRC and EEOC letters.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract as to TriHealth)**

36. Dr. Shahid hereby incorporates each of the foregoing paragraphs as if fully rewritten herein and further states that:

37. Dr. Shahid and TriHealth entered the PEA for professional services governing the terms and conditions of his employment at TriHealth. In breach of the PEA, TriHealth failed to provide the medical supplies, instrumentation, equipment, and staffing required under the PEA to support his practice adequately. Dr. Shahid has fully complied with and performed all contractual obligations he was required to perform under the PEA and gave TriHealth thirty days notice to cure and of termination for cause under the PEA. TriHealth failed to cure the breach, refuses to cure TriHealth's breach of the PEA, and continues to deny breaching the PEA. As a direct and proximate cause of TriHealth's breach of the PEA, Dr. Shahid has incurred damages, including loss of income from the wrongful termination of his practice and the cost of starting a new practice.

The total amount of Dr. Shahid's damages have not yet been fully ascertained but exceeds $150,000.00 and shall be proven at the trial of this action.

**SECOND CLAIM FOR RELIEF**
**(Violation of 42 U.S.C. §§ 1981 as to all Defendants)**

38. Dr. Shahid hereby incorporates each of the foregoing paragraphs as if fully rewritten herein and further states that:

39. While an employee of TriHealth, Dr. Shahid was subjected to intentional and malicious discrimination and reprisal. TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, interfered with Dr. Shahid's contractual relationship with TriHealth by denying his promotion to Associate Director and DoP, harassing and abusing him, and discriminating against him by disproportionate holiday scheduling, chronic understaffing, and subjecting him to chronic shortages of medical supplies, equipment, and instrumentation. TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, unlawfully placed Dr. Shahid on a PIP and, in reprisal for his discrimination reports, used Dr. Brian Stader, TriHealth's President, as an unwitting cat's paw to unlawfully terminate him.

40. Similarly situated Christian and Caucasian employees were not subjected to the same unfavorable treatment, were promoted, adequately staffed with support personnel, and adequately supplied with medical supplies, equipment, and instruments, and were not unlawfully placed on performance improvement plans and then terminated from their employment. The discrimination against Dr. Shahid was motivated by racial (national origin and ethnicity) and religious discrimination and was intentional and malicious.

41. The discrimination and reprisal against Dr. Shahid created an intimidating, hostile, and offensive working environment, interfered with his ability to perform his duties, and subjected him

to emotional distress and mental anguish. The Defendants knew of the discrimination and knowingly and intentionally discriminated against Dr. Shahid, failed to take remedial action sufficient to eliminate the discrimination, and actively participated in and condoned the race and religious discrimination and reprisal and the abusive and hostile treatment of Dr. Shahid by the Defendants.

42. As a direct and proximate cause of the discrimination and reprisal by the Defendants in violation of federal law, Dr. Shahid has suffered injury to his reputation, plus his medical practice, was denied a promotion to Associate Director and DoP, was unlawfully placed on a PIP, and was unlawfully terminated from his employment. As a direct and proximate result of the Defendants' unlawful misconduct, Dr. Shahid has suffered loss of income, severe emotional distress, mental anguish, and expense. Pursuant to 42 U.S.C. §§ 1981 and 1988, and for the violation of Dr. Shahid's known rights, Dr. Shahid is entitled to back wages and compensatory damages in an amount not yet fully ascertained but over $150,000, including costs, and reasonable attorney fees, declaratory judgment, punitive damages, and pre-judgment and post-judgment interest.

### THIRD CLAIM FOR RELIEF
### (Violation of Title VII as to TriHealth)

43. Dr. Shahid hereby incorporates each of the foregoing paragraphs as if fully rewritten herein and further states that:

44. While an employee of TriHealth, Dr. Shahid was subjected to intentional and malicious discrimination and reprisal. TriHealth denied Dr. Shahid's promotion to Associate Director and DoP, harassed and abused him, and discriminated against him by disproportionate holiday scheduling, chronic understaffing, and chronic shortages of medical supplies, equipment, and

instrumentation. TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, unlawfully placed Dr. Shahid on a PIP and, in reprisal for his reports of discrimination, used Dr. Brian Stader, TriHealth's President, as an unwitting cat's paw to unlawfully terminate him.

45. Similarly situated Christian and Caucasian employees were not subjected to the same unfavorable treatment, were promoted, adequately staffed, and adequately supplied with medical supplies, equipment, and instruments, and were not unlawfully placed on performance improvement plans and then terminated from their employment. The discrimination against Dr. Shahid was motivated by racial (national origin and ethnicity) and religious discrimination and was intentional and malicious.

46. The discrimination and reprisal against Dr. Shahid created an intimidating, hostile, and offensive work environment, interfered with his ability to perform his duties, and subjected him to emotional distress and mental anguish. TriHealth knew of the discrimination and knowingly and intentionally discriminated against Dr. Shahid, failed to take remedial action sufficient to eliminate the discrimination, and actively participated in and condoned the race and religious discrimination and the abusive and hostile treatment of Dr. Shahid by the Defendants.

47. As a direct and proximate cause of the discrimination and reprisal by TriHealth in violation of federal law, Dr. Shahid has suffered injury to his reputation, the loss of his practice, loss of income, was denied a promotion to Associate Director, and DoP, was unlawfully placed on a PIP, and then was unlawfully terminated from his employment. As a direct and proximate result of the Defendants' unlawful misconduct, Dr. Shahid has suffered loss of income, severe emotional distress, and mental anguish and has sustained substantial expense.

48. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A, and for the violation of Dr. Shahid's known rights, Dr. Shahid is entitled to back wages, and compensatory damages in an amount not yet fully ascertained but over $150,000, including costs, and reasonable attorney fees, declaratory judgment, punitive damages, and pre-judgment and post-judgment interest.

### FOURTH CLAIM FOR RELIEF
### (Violation of R.C. Chapter 4112 as to as to all Defendants)

48. Dr. Shahid hereby incorporates each of the foregoing paragraphs as if fully rewritten herein and further states that:

49. As an employee of TriHealth, Dr. Shahid was subjected to intentional and malicious discrimination. In violation of R. C. 4112.02, TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, denied Dr. Shahid's promotion to Associate Director and DoP, verbally harassed and abused him, and discriminated against him by disproportionate holiday scheduling, chronic understaffing, and chronic shortages of medical supplies, equipment, and instrumentation. TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, unlawfully placed Dr. Shahid on a PIP and, in reprisal for his reports of discrimination, used Dr. Brian Stader, TriHealth's President, as an unwitting cat's paw to unlawfully terminate him.

50. Similarly situated Christian and Caucasian employees were not subjected to the same unfavorable treatment, were promoted to DoP, adequately staffed, and adequately supplied with medical supplies, equipment, and instruments, and were not unlawfully placed on performance improvement plans and then terminated from their employment. The discrimination against Dr.

Shahid was motivated by racial (national origin and ethnicity) and religious discrimination and was intentional and malicious.

51. The discrimination and reprisal against Dr. Shahid created an intimidating, hostile, and offensive work environment, interfered with his ability to perform his duties, and subjected him to financial loss, emotional distress, and mental anguish. The Defendants knew of the discrimination and knowingly and intentionally discriminated against Dr. Shahid, failed to take remedial action sufficient to eliminate the discrimination, and actively participated in and condoned the race (national origin and ethnicity) and religious discrimination, reprisal, and the abusive and hostile treatment of Dr. Shahid by the Defendants.

52. At all times relevant hereto, TriHealth, aided and abetted by Mr. Cobb and Dr. Roof, intentionally discriminated and retaliated against Dr. Shahid, using Dr. Brian Stader, TriHealth's President, as an unwitting cat's paw to unlawfully terminate him. In violation of R.C. § 4112.02(J), Mr. Cobb and Dr. Roof aided, abetted, incited, compelled, and coerced TriHealth's discriminatory treatment of Dr. Shahid and his retaliatory termination and are personally liable to Dr. Shahid for their unlawful conduct.

53. As a direct and proximate cause of the discrimination and reprisal by the Defendants in violation of state law, Dr. Shahid has suffered injury to his reputation, was denied a promotion to Associate Director and DoP, was unlawfully placed on a PIP, was unlawfully terminated from his employment, and lost his practice. As a direct and proximate result of the Defendants' unlawful misconduct, Dr. Shahid has suffered severe emotional distress and mental anguish and has sustained substantial expense. Under R.C. Chapter 4112, and for the violation of Dr. Shahid's known rights, Dr. Shahid is entitled to back wages and compensatory damages in an amount not

yet fully ascertained but over $150,000, including costs and reasonable attorney fees, declaratory judgment, punitive damages, and pre-judgment and post-judgment interest.

### FIFTH CLAIM FOR RELIEF
### (Request for Declaratory Judgment and Injunctive Relief)

54. Dr. Shahid hereby incorporates each of the foregoing paragraphs as if fully rewritten herein and further states that:

55. TriHealth asserts that under the PEA, Dr. Shahid is contractually obligated to comply with TriHealth EPPM policies, even though the EPPM expressly states that it is not a contract. The PEA also purports to require Dr. Shahid to abide by the policies of third organizations, including the *Ethical and Religious Directives for Catholic Health Care Services*, Fifth Edition, and all TriHealth policies and procedures, rules, regulations, and protocols of the TPEC, the Compliance Manual policies, the TCEBPB, and the CCP. However, under the PEA, TriHealth is not required to comply with these policies.

56. At all times relevant hereto, TriHealth has reserved the right to "interpret" and change its employment policies at will, including the compensation policies subject of TriHealth's claims against Dr. Shahid, without notice and without his consent. Under Ohio law, employment policies are not contractual obligations when the employer reserves the right to unilaterally change the policies, as there is no manifest intent to create a mutual obligation. Furthermore, the EPPM expressly states that it is not a contract. Under Ohio law, Dr. Shahid has no contractual obligation to comply with TriHealth's employment policies.

57. TriHealth has demanded that Dr. Shahid pay $294,083.00, claiming that the PEA contractually requires him to pay this amount under TriHealth's separate employment policies. Dr.

Shahid respectfully requests a declaratory judgment that TriHealth's employment policies do not constitute contractual obligations under the PEA, that Dr. Shahid is not required to pay TriHealth anything under the EPP, and an injunction against TriHealth from continuing to pursue this claim and requiring TriHealth to correct Dr. Shahid's employment records to reflect his resignation.

WHEREFORE, Dr. Shahid respectfully demands judgment, declaratory judgment, and injunctive relief against all Defendants in an amount not yet ascertained but over $150,000.00, together with pre-judgment interest, interest, costs herein expended, reinstatement, compensatory damages, punitive damages, and reasonable attorney fees, and such other relief as the Court finds just.

Respectfully Submitted,

Folkerth + Routh LLC


John R. Folkerth, Jr. (0016366)
Trial Attorneys for Dr. Mohammed Shahid
3033 Kettering Blvd.
111 Point West II
Dayton, Ohio 45439
(937)260-4202
(937)260-4201 (facsimile)
jfolkerth@wfrlawyers.com

## JURY DEMAND

Now comes the Plaintiff, Dr. Mohammed Shahid, pursuant to the Civil Rule 38, and hereby demands a trial by jury herein.

John R. Folkerth, Jr.